IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THORN FLATS, LLC**, <br><br> Plaintiff, <br><br> *v.* <br><br> **BUILDPRO CONSTRUCTION LLC,** <br><br> Defendant. | CIVIL ACTION <br><br> NO. 21-5412-KSM |

### MEMORANDUM

**MARSTON, J.**                                                                                                                          **May 26, 2022**

This case involves a straightforward claim for breach of contract.  For the reasons discussed below, we grant Plaintiff Thorn Flats, LLC's motion for default judgment.

**I.   BACKGROUND**

Thorn Flats is a Delaware company that develops and leases luxury apartments.  (Doc. No. 1 at ¶ 1.)  Between September 2020 and May 2021, Thorn Flats entered five work authorization agreements with Defendant BuildPro Construction LLC, which named BuildPro as general contractor for substantial renovation work at eight apartment buildings owned by Thorn Flats.  (*Id.* at ¶¶ 7–13.)  In each work authorization, BuildPro agreed to "pay promptly all sums due for labor, services, materials, tools, and equipment supplied in connection with the performance of the Work."  (*Id.* at ¶ 14.)  If BuildPro breached this or any other provision of the agreement, Article 11 of each agreement authorized Thorn Flats, after adequate notice to BuildPro, to "terminate this Agreement and take possession of all materials, tools and equipment at the project."  (*Id.* at ¶ 16.)  In addition, if the cost of completing the project exceeded any

unpaid balance to BuildPro, BuildPro would be obligated to "pay the difference . . . plus damages, including attorneys' fees." (*Id.*)

On June 22, 2021, Thorn Flats notified BuildPro that it had breached the work authorizations by "failing to pay its subcontractors and suppliers for work they had performed and/or materials which they had supplied and for which BuildPro had received compensation from Thorn Flats." (*Id.* at ¶ 17.) When BuildPro failed to cure its breach, Thorn Flats pursued its Article 11 rights and terminated the agreements. (*Id.* at ¶ 18.) Thorn Flats hired a new contractor, and as a result "incur[red] additional costs, including the costs of completing BuildPro's work and paying subcontractors and suppliers directly for the work that Thorn Flats had already paid BuildPro for, in an amount in excess of $100,000." (*Id.* at ¶ 20.)

On December 10, 2021, Thorn Flats filed this action against BuildPro, asserting one claim for breach of contract and one for breach of fiduciary duty/misappropriation of trust funds. (*See generally* Doc. No. 1.) Thorn Flats timely served copies of the complaint and summons on BuildPro's agent. (Doc. No. 2.) When BuildPro failed to respond to the complaint, Thorn Flats requested entry of default (Doc. No. 3), which the Clerk of Court entered on January 24, 2022. Thorn Flats then moved for default judgment (Doc. No. 4), and the Court held a hearing on the motion on May 2, 2022 (Doc. No. 5). BuildPro did not appear at the hearing.

## II. DEFAULT JUDGMENT

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an actison, the party may be subject to entry of a default judgment." *Serv. Emps. Int'l Union v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 634 (E.D. Pa 2018) (quoting Fed. R. Civ. P. 55(a)). The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by

computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Where a party moves for default judgment, the court evaluates the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Int'l Union of Operating Eng'rs v. N. Abbonizio Contractors*, 134 F. Supp. 3d 862, 865 (E.D. Pa. 2015). In evaluating these factors, the court accepts as true all factual allegations in the complaint, except those related to damages. *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635. However, "a party in default does not admit mere conclusions of law," so before considering the *Chamberlain* factors, we begin by considering "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (quotation marks omitted).

### A.    Cause of Action

Thorn Flats has stated a claim for breach of contract.[1] "'Breach of contract is a claim with three elements: [1] a contractual obligation; [2] a breach of that obligation by the defendant; and [3] a resulting damage to the plaintiff.'" *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 202 (Del. Super. Ct. 2020) (quoting *Connelly v. State Farm Mut. Auto Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016)).[2] Each element is satisfied here. Thorn

---

[1] Because Thorn Flats seeks the same damages under Count I and Count II, and we find it has stated a claim for breach of contract, we need not analyze whether Thorn Flats has also stated a claim for breach of fiduciary duty.

[2] Each work authorization includes a jurisdiction and venue provision, which states that the "Agreement shall be governed by the laws of the jurisdiction in which the Project is located." (*See, e.g.*, Doc. No. 1-1 at p. 7, Article 18; Doc. No. 1-2 at p. 6, Article 18; Doc. No. 1-3 at p. 6, Article 18; Doc. No. 1-4 at p. 7, Article 18; Doc. No. 1-5 at p. 6, Article 18.) Each project was located in Newark, Delaware, so Delaware law controls. (*See, e.g.*, Doc. No. 1-1 at p. 2; Doc. No. 1-2 at p. 2; Doc. No. 1-3 at p. 2; Doc. No. 1-4 at p. 2; Doc. No. 1-5 at p. 2.)

Flats submitted copies of the five work authorizations, which outline BuildPro's obligation to pay subcontractors and suppliers.  (Doc. No. 1-1 at p. 6, Article 10; Doc. No. 1-2 at p. 5, Article 10; Doc. No. 1-3 at p. 5, Article 10; Doc. No. 1-4 at p. 6, Article 10; Doc. No. 1-5 at p. 5, Article 10.)  BuildPro breached the agreements in June 2021 when it failed to pay its subcontractors and suppliers.  (Doc. No. 1 at ¶ 17.)  As a result, Thorn Flats incurred costs hiring another contractor to complete the projects and "paying subcontractors and suppliers directly for work that Thorn Flats had already paid BuildPro for."  (*Id.* at ¶ 19.)

### B.    *Chamberlain Factors*

Having found that Thorn Flats states a legitimate cause of action for breach of contract, we turn to the *Chamberlain* factors and find that they weigh in favor of granting default judgment in this case.  First, Thorn Flats will be prejudiced if default judgment is denied because Thorn Flats paid $100,000 to the subcontractor that BuildPro failed to pay—an amount Thorn Flats had already paid once to BuildPro.  Denying default judgment would leave Thorn Flats on the hook twice.  *See Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 ("First, Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed."); *Trustees of the Nat'l. Elevator Indus. Pension Plan v. Universal Elevator Corp.*, Civil Action No. 11–3381, 2011 WL 5341008 at *3 (E.D. Pa. Nov. 3, 2011) ("Clearly, Plaintiffs will suffer prejudice if this Court denies their motion for default judgment; Plaintiffs are not receiving payments owed them.").  In addition, "declining to enter default judgment would prejudice [Thorn Flats] because [BuildPro's] default has prevented [it] from litigating this matter and [it] will not be able to recover the delinquent contributions and other liabilities [it is] due absent the entry of default judgment." *Trustees of Nat'l Electrical Benefit Fund v. Mirarchi Bros.*, CIVIL ACTION NO. 21-4399-KSM, 2022 WL 221610, at *4 (E.D. Pa. Jan. 24, 2022).

Second, BuildPro does not appear to have a litigable defense. As discussed above, Thorn Flats's allegations establish a cause of action for breach of contract. Because BuildPro has not filed an answer, there are no facts to suggest that Thorn Flats is not entitled to reimbursement for the amounts it was forced to pay BuildPro's subcontractors and suppliers. (*Id.* at p. 2 ¶ 8.) *See Acosta v. Schwab*, No. 5:18-CV-3544, 2019 WL 7046916 at *8 (E.D. Pa. Dec. 20, 2019) (citations omitted) (explaining that the court may "presume that an absent defendant who has failed to answer has no meritorious defense . . . because [i]t is not the court's responsibility to research the law and construct the parties' arguments for them" (cleaned up)); *cf. Stevens v. Wiggins*, Civ. A. No. 90-7038, 1991 WL 152960, at *2 (E.D. Pa. Aug. 6, 1991) ("A defendant establishes a meritorious defense when the defendant's answer, if established at trial, would constitute a complete defense to the action." (quotation marks omitted)).

Third, the Court finds that BuildPro's delay is due to its own culpable conduct. BuildPro's authorized agent received the complaint and summons as well as the motion for default judgment, but the company has knowingly decided not to enter an appearance or otherwise defend itself in this case. *See Kelly M. v. Luzerne Intermediate Unit*, 71 F. App'x 116, 118 (3d Cir. 2003) ("Jerrytone's conduct in failing to respond to the several personal notices he received from plaintiffs' counsel or to appear at several hearings was culpable."); *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 (explaining that "culpable conduct" refers to conduct "taken willfully or in bad faith," and finding that "Defendant's failure to respond to the complaint and failure to attend the hearing were both 'willful,' in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing" but still failed to appear or otherwise respond to the complaint); *cf. Spurio*, 880 F. Supp. at 405 (finding no culpable conduct where the record "contain[ed] no evidence that defendant's

5

two-day delay was intentionally dilatory or otherwise in bad faith"). Indeed, during the hearing, Plaintiffs' counsel confirmed that BuildPro has refused to answer her telephone calls and one time, BuildPro's representative actually hung up on her and a representative for Thorn Flats once BuildPro's representative realized who was calling. (*See* H'rg. Tr.; *see also* Doc. No. 9 (Plaintiffs' counsel confirming that the subcontractor's counsel has likewise been unable to reach BuildPro).)

Because Thorn Flats has stated a cause of action for breach of contract and the *Chamberlain* factors weigh in its favor, default judgment is appropriate.

## III.    DAMAGES

"Having determined that [Thorn Flats is] entitled to entry of default judgment, the Court must calculate the proper amount of damages . . . ." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637. Thorn Flats seeks to recover $100,000, along with pre- and post-judgment interest, attorneys' fees, and costs. (*See* Doc. No. 4 at ¶ 6.). We address each amount in turn.

### A.    *Compensatory Damages*

First, Thorn Flats seeks $100,000 as compensation for the breach of contract. (Doc. No. 4 at ¶ 6.) At default judgment, the court must "calculate the appropriate amount of damages[ ] and need not accept the plaintiff's representations on damages as true." *Tristrata Tech, Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 165 (D. Del. 2010) (quoting *Christ v. Cormick, C.A.*, Nos. 06-275-GMS, 07-060-GMS, 2008 WL 4889127, at *1 (D. Del. Nov. 10, 2008)). "In a breach of contract case, the amount of damages a plaintiff is entitled to is measured by what is necessary to place the plaintiff in the same position that he would have been in if the contract had been performed." *U.S. for Use of Endicott Enters. Inc. v. Star Brite Const. Co.*, 848 F. Supp. 1161, 1169 (D. Del. 1994).

Here, Thorn Flats claims in its complaint that it incurred damages in "an amount well in excess of $100,000" when it had to hire another contractor to finish the projects and paid "subcontractors and suppliers directly for work," for which "Thorn Flats had already paid BuildPro." (Doc. No. 1 at ¶ 19.) Consistent with this allegation, Thorn Flats seeks compensatory damages of $100,000. (Doc. No. 4 at ¶ 6.) During the default judgment hearing and in supplemental filings, Plaintiffs' counsel confirmed that "the $100,00 sought in the complaint is for monies paid to [the subcontractor] through a negotiated settlement." (Doc. No. 9 at p. 2.) This is sufficient. *See Levitation Arts, Inc. v. Plox, Inc.*, C.A. No. 17-1476-MN, 2020 WL 2730905, at *2–3 (D. Del. May 26, 2020) (finding that "Plaintiff's request for $289,575.00 is appropriate and supported by the record"); *Ascendia USA, Inc. v. AdvancePost, Inc.*, No. 1:12–cv–2169, 2013 WL 877132, at *2 (M.D. Pa. Mar. 8, 2013) ("Plaintiff has supported the requested amount of damages, save for the amount of attorney's fees, with exhibits and an affidavit.").

We grant Thorn Flats's request for an award of $100,000 in compensatory damages.

**B.    Interest**

Next, we analyze Thorn Flats's request for pre- and post-judgment interest.

"Under Delaware law, a party is entitled to prejudgment interest when the amount of damage is calculable, and such interest has been awarded in breach of contract cases." *U.S. for Use of Endicott Enters. Inc.*, 848 F. Supp. at 1169; *cf. Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 487 (Del. 2011) ("[P]rejudgment interest in Delaware cases is awarded as a matter of right[.]"). "[P]re-judgment interest 'accumulates from the date payment was due to the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance.'" *Jewell v. Miller*, Civil Action No. 21-324-MN, 2021 WL 3510771, at *3 (D. Del. July 2, 2021) (quoting

*Brandywine Smyrna, Inc. v. Millenium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011)).  When, as here, the contract does not provide an interest rate, a statutory interest rate applies, *Enzo Life Sciences, Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 607 (D. Del. 2015) (citing 6 Del. Code § 2301(a)); *U.S. for Use of Endicott Enters. Inc.*, 848 F. Supp. at 1169 (same), and it sets "the legal rate of interest" at "5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due," 6 Del. Code § 2301(a).  The Federal Reserve discount rate was 0.25% in June 2021, when BuildPro breached the contract.[3]  Therefore, Thorn Flats is entitled to pre-judgment interest at a rate of 5.25%.

As for post-judgment interest, because it will accrue on a *federal* judgment, we look to federal law to determine whether Thorn Flats is entitled to interest.  Federal law provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Id.*  Therefore, Thorn Flats is entitled to post-judgment interest at a rate of 2.11%.[4]

### C.     *Attorneys' Fees and Costs*

Last, we turn to Thorn Flats's request for attorneys' fees and costs.

Thorn Flats is entitled to attorneys' fees under Article 11 of each work authorization.  As of May 2, 2022, Thorn Flats had incurred $19,327.56 in attorneys' fees and $546.80 costs.  (Doc.

---

[3] The Federal Reserve publishes current and historical discount rates online at https://www.frbdiscountwindow.org/pages/discount-rates (last visited Apr. 28, 2022).

[4] This rate can be found online at https://www.federalreserve.gov/datadownload/Preview.aspx?pi=400&rel=H15&preview=H15/H15/RIFLGFCY01_N.WF (last visited May 26, 2022).

No. 6 at ¶ 7; Doc. No. 4 at ¶ 2; Doc. No. 9 at ¶ 5.) To support its request for fees, Thorn Flats submitted affidavits by lead attorney, Margaret England, along with copies of all invoices paid by Thorn Flats to date. (Doc. No. 6-1; Doc. No. 9.) Those invoices show that five individuals at the law firm Gellert, Scali, Busenkell & Brown worked on the case: Charles J. Brown III (Partner; hourly rate $425), Margaret F. England (Of Counsel; hourly rate $375), Bradley P. Lehman (Associate; hourly rate $310), Richard Bennett (Paraprofessional; hourly rate $130), Ashley P. Gollmann (Paraprofessional; hourly rate $160). (*See* Doc. No. 6-1; Doc. No. 9 at ¶¶ 6–11.) Collectively, they worked more than 58 billable hours. (*See* Doc. No. 6-1; Doc. No. 9 at pp. 11–12.) England's affidavit gives each individual's position and level of experience and testifies that the "hourly fee charged for services" is the law firm's "standard rate for legal work related to contract and lien law and is competitive in both the State of Delaware and the Commonwealth of Pennsylvania." (Doc. No. 9.) During the default judgment hearing, England also explained that the firm has spent a significant number of hours on this matter because she and her colleagues not only pursued this case but also negotiated the settlement with the subcontractor and have repeatedly (and unsuccessfully) tried to contact BuildPro.

The Court finds the proposed award for attorneys' fees and costs reasonable and grants Thorn Flats' request for $19,874.36 in fees and costs.

## IV. CONCLUSION

Because Thorn Flats has stated a legitimate cause of action for breach of contract, and the *Chamberlain* factors weigh in favor of granting default judgment, Thorn Flats's motion is granted, and judgment is entered in favor of Thorn Flats in the amount of $100,000, plus pre- and post-judgment interest, and $19,874.36 in fees and costs.

An appropriate order follows.